```
        IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MARYLAND
                                  :
MONICA CHO
                                  :
   v.                             :  Civil Action No. DKC 2005-2350
                                  :
MONTGOMERY COUNTY, MARYLAND
                                  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this discrimination case are the motion by Defendant Montgomery County, Maryland (the "County") to dismiss (paper 11), and the motions by a third party, W. Barry Wraga, to intervene and to dismiss (paper 10).[1] The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, Mr. Wraga's motion to intervene will be denied, and the motion of Montgomery County to dismiss will be granted, albeit in part without prejudice to amendment.

**I. Background**

Plaintiff Monica Cho, a resident of Montgomery County, is legally blind. In September 2003, Plaintiff asked the County to install a sidewalk on a six-block portion of Falls Park Way, a road adjacent to her home. As required by local law, a public hearing was held regarding the proposal. Following the hearing, the Public Hearing Officer ("PHO") submitted a report to the County Executive

---

[1] Mr. Wraga filed one motion, requesting both intervention and dismissal of Plaintiff's claim.

regarding the proposal.  The PHO did not recommend the project's authorization, and the County Executive subsequently denied the proposal.  On or around July 21, 2005, Plaintiff filed a complaint in the Circuit Court for Montgomery County, alleging that the County discriminated against her on the basis of her disability and violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).  On August 25, 2005, the County removed the case to this court pursuant to 28 U.S.C. § 1441 because it involved a federal question.

In her single count complaint, Plaintiff alleges that because of the County's refusal to build the requested sidewalk, there is no safe pedestrian travel route to the local public elementary school, voting facilities, and public transportation.[2]  Plaintiff asserts that the County's failure to construct the requested sidewalk denies her reasonable access to these public facilities.  She asserts that local governments are "required to maintain and construct appropriate sidewalks that are accessible to individuals

---

[2] In her opposition memorandum, Plaintiff also alleges that she is denied access to a public park.  Plaintiff states that the park is "owned and maintained by the Maryland National Capital Parks and Planning Commission."  (Paper 15, at 8).  It is unclear whether Plaintiff contends that the County controls the public park Plaintiff alleges she is denied access to, and therefore whether the County would be required by law to ensure its accessibility.

with disabilities." She claims "Sidewalks qualify as services, programs, or activities within the meaning of the ADA."

Plaintiff seeks "construction of a four foot wide concrete sidewalk within the public right-of-way on the north-west side of Falls Chapel Way from Cold Spring Road to Orchard Brook Drive," and other equitable relief the court deems appropriate. On August 30, 2005, Mr. Wraga, a property owner in Plaintiff's neighborhood, filed a motion to intervene and to dismiss Plaintiff's complaint. On September 1, 2005, the County filed a motion to dismiss.

## II. Motion to Intervene

Mr. Wraga, an attorney proceeding *pro se*, requests that the court grant intervention as a defendant of right under Fed.R.Civ.P. 24(a) or alternatively, permit intervention under Fed.R.Civ.P. 24(b).[3] Fed.R.Civ.P. 24(a) states, in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

As this court has noted:

> To establish the right to intervene in an action under Rule 24(a), an intervenor must

---

[3] Plaintiff did not oppose the motion for intervention, but did file an opposition memorandum in response to Mr. Wraga's motion to dismiss.

> (1) submit a timely motion; (2) demonstrate a "direct and substantial interest" in the property or transaction; (3) prove that the interest would be impaired if the intervention was not allowed; and (4) establish that the interest is inadequately represented by existing parties. *First Penn-Pacific Life Ins. Co. v. William R. Evans, Chartered*, 200 F.R.D. 532, 536 (D.Md. 2001) (citing *In Re Richman*, 104 F.3d 654, 659 (4th Cir. 1997)). A party moving for intervention under 24(a) bears that burden of establishing a right to intervene, and must do so by satisfying all four requirements. *In re Richman*, 104 F.3d at 658.

*United States ex rel. MPA Constr., Inc. v. XL Specialty Ins. Co.*, 349 F.Supp.2d 934, 936-37 (D.Md. 2004).

Intervention of a private party as a defendant in a suit against a governmental entity for violation of a federal law is rarely, if ever, appropriate. *See, e.g., Piedmont Heights Civic Club, Inc. v. Moreland*, 83 F.R.D. 153 (N.D.Ga. 1979). This is not one of the cases where intervention will be granted.

Although Mr. Wraga has moved timely to intervene, he could not be a defendant and thus, does not have the required kind of "direct and substantial interest" in the transaction just because the sidewalk Plaintiff requests would cross through Mr. Wraga's property. Other than stating that his petition is "of right," Mr. Wraga makes no effort to establish that the other *First Penn Pacific Life Insurance Company* factors are met. Mr. Wraga does not allege that his interest would be impaired if the intervention was not allowed or that his interest is inadequately represented by the

4

County.  Accordingly, his motion to intervene as of right will be denied.

Nor will the court use its discretionary power to grant permissive intervention pursuant to Fed.R.Civ.P. 24(b). Fed.R.Civ.P. 24(b) states, in relevant part:

> Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . .  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

A private individual can have no role in defending an action against a public entity under the anti-discrimination statutes. Accordingly, Mr. Wraga will not be permitted to intervene in this action.

**III.  Motion to Dismiss**

**A.  Standard of Review**

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).  Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

Plaintiff attaches multiple documents to her opposition memorandum which are neither referred to nor incorporated in her complaint. As such, they are irrelevant to the court's determination of the motion to dismiss, except to the extent that the material may reflect on her ability to amend the complaint to state a claim.

**B. Analysis**

**1. Rehabilitation Act Claim**

The County first asserts that Plaintiff's Rehabilitation Act claim should be dismissed because Plaintiff fails to allege that the County receives federal funding. The Rehabilitation Act provides, in pertinent part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his

6

disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).  Plaintiff does not allege, in either her complaint or in her opposition memorandum, that the County receives federal funding.  Hence, Plaintiff has failed to state a claim pursuant to 29 U.S.C. § 794(a) and the court will dismiss Plaintiff's Rehabilitation Act claim with prejudice.

**2.   ADA Claim**

Title II of the ADA prohibits discrimination by local governments, such as the County, by providing that: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a claim of discrimination under Title II of the ADA, Plaintiff must establish:  (a) she has a disability; (b) she is otherwise qualified for the benefit in question; and (c) she is excluded from the benefit on the basis of the disability.  *Davis v. Univ. of N.C.*, 263 F.3d 95, 99 (4th Cir. 2001).

The County argues that there is no legal basis for the court to order the executive branch to build a **new** sidewalk under the ADA, nor has Plaintiff stated a viable claim for denial of access to a local public school, a voting facility, or public transportation.

7

In her opposition memorandum, Plaintiff makes several additional arguments. First, she asserts that she is denied access to the existing sidewalks on Falls Chapel Way because the two existing walkways are not connected and therefore she cannot travel safely between them.[4] Second, Plaintiff states that because the County refused her request for a sidewalk she is denied access to the "Sidewalk Program," a capital improvements program whose purpose is to facilitate the construction of sidewalks in existing Montgomery County neighborhoods. Third, Plaintiff asserts that the County discriminated against her "by failing to consider her disability during the decision process in violation of their own standards."[5]

Because Plaintiff has not precisely pled either the benefit from which she claims she was excluded, or how the absence of a sidewalk caused that exclusion, it is difficult to determine whether she has or can state a claim. Plaintiff's complaint is clearly focused on the relief she seeks, *i.e.* a sidewalk, but woefully confused as to the public facility she claims she is

---

[4] The current sidewalks run along Falls Chapel Way from Falls Road to Orchard Brook Drive and from Falls Road to Cold Spring Road. The sidewalk Plaintiff seeks to have constructed would join the two existing sidewalks.

[5] Plaintiff additionally maintains that the County has almost always approved other sidewalk proposals, both before and after her request. Plaintiff is not, however, implicitly asserting a disparate impact claim because she acknowledges that the County considered the needs of the disabled in granting those proposals. It is unclear what legal relevance these other approvals have with regard to Plaintiff's claim.

denied access to by the absence of the sidewalk.  The court will attempt to analyze the complaint as if it asserts three different types of violations: the absence of a sidewalk by itself; the absence of a sidewalk to connect two existing sidewalks; and the absence of a sidewalk as it might deny her access to a public school, a voting facility, or to transportation.

**a. Sidewalk Qua Sidewalk**

There is scant case law pertaining to requests under the ADA for the construction of new sidewalks where none currently exist. The overwhelming majority of ADA case law involving sidewalks, including the Ninth Circuit case Plaintiff relies on, *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002), addresses requests to make existing sidewalks accessible (e.g., by means of curb cutouts or other measures).  No authorities hold that a government must construct a sidewalk simply to comply with the ADA.

Plaintiff argues that she is denied access to the "Sidewalk Program" because the County refused her request.  Plaintiff implies that the County, in order to comply with the ADA, must grant every request of anyone who is disabled with regard to any program it administers.  This argument is illogical and far exceeds the scope of the ADA.  *See Pathways Psychosocial v. Leonardtown,* 223 F.Supp.2d 699, 718 (D.Md. 2002)(stating that the ADA was designed to give equal footing to individuals with disabilities, but it does not provide for preferential treatment).

Plaintiff also asserts that the County violated the ADA by not considering her disability in its decision-making process. However, Plaintiff fails to point to any provision of the ADA or its implementing regulations that would render this action, alone, to be a violation of the statute.

Thus, there is no viable legal theory that would permit Plaintiff to seek construction of a sidewalk under the ADA without regard to other public facilities.

**b. Sidewalk Connection**

Plaintiff argues that she is discriminated against because she cannot use the sidewalk system on Falls Road Way because there are two sidewalks that are not connected. Plaintiff points to no provision of the ADA or the corresponding regulations that would require the County to connect its sidewalks. The public, including both the disabled and the nondisabled, have full access to the existing "public program" (i.e., the existing sidewalks). To the extent that there is no access to the connector sidewalk, it is because it does not exist, and not because Plaintiff is disabled. Plaintiff's argument, taken to its extreme, would mean that every local government was required to connect every one of its sidewalks or else they would all be deemed "inaccessible." The court is not willing to embrace this interpretation of the statute. In fact, in a contradictory statement, Plaintiff acknowledges that "[t]he ADA does not require the blanket construction of new sidewalks along all public streets in the County." (Paper 15, at 13).

10

**c. Access to Public School/Voting Facility/Transportation**

Plaintiff asserts that she is denied access to the existing local public elementary school, voting facilities, and the bus stop because there is no safe path upon which to walk to these various sites. The County does not dispute that Plaintiff is disabled or that she is qualified to receive the benefits of the public school, voting facilities, and transportation. What is lacking from Plaintiff's complaint is any allegation of fact as to when and how she was excluded from or denied access to these public benefits. While it is clear that she thinks a new sidewalk will enhance her access, she does not allege facts showing that she has in fact been excluded from or denied access to them.

An example of the requirement that a complaint allege facts and not mere legal conclusions is *Konigsberg v. Lefevre*, 267 F.Supp.2d 255, 261-62 (N.D.N.Y. 2003):

> Plaintiff makes a general claim that some of his legal materials were lost, copied or purposely destroyed by defendants. Plaintiff's statement that he has been denied access to the courts is wholly conclusory. Although he does identify a pending appeal, he does not identify particular legal documents; show how the allegedly missing documents related to his appeal or new trial; assert any facts showing that his pursuit of any litigation identified by him was in any way affected by his lack of access to any particular documents. Plaintiff does not indicate how he has been "denied access" within constitutional limitations. He has failed to establish the existence of a genuine issue of material fact or to even plead a constitutional claim with respect to his right

> of access to the courts allegations. The court cannot presume harm in evaluating whether defendants have violated plaintiffs right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 360 n. 7, 116 S.Ct. 2174, 2184 n. 7, 135 L.Ed.2d 606 (1996). ("Courts have no power to presume and remediate harm that has not been established."); see also, Arce v. Walker, 58 F.Supp.2d 39 (W.D.N.Y. 1999) ("a prisoner's conclusory assertion that he suffered prejudice does not suffice to support an access to courts claim . . . some showing of impaired access is required").

Moreover, it is not even Plaintiff's burden to prove how a disability should be accommodated, nor to plead it. For example, in *Bacon v. City of Richmond*, 386 F.Supp.2d 700, 707 (E.D.Va. 2005), the court observed:

> The law does not require, as City Defendants suggest, that Plaintiffs request some specific form of accommodation as a prerequisite to a valid ADA claim. This argument is frankly ludicrous. The ADA requires that any program or activity held at a school be made accessible to the handicap[ped]. The burden is not on the disabled to create accommodation solutions, but on those that provide services or facilities which hinder their participation.

Here, Plaintiff insists that she is entitled to a particular method of rectifying what she sees as a violation of the ADA. In doing so, she skips over the primary element of her claim: a description of the aspect of the public facility from which she is excluded. It would then be up to the proper authorities, and not Plaintiff, to determine how to remedy that violation. Moreover, Plaintiff should articulate her claims separately by reference to each public facility from which she is excluded.

## IV. Conclusion

Mr. Wraga's motion to intervene will be denied.  The motion of Montgomery County to dismiss will be granted.  Plaintiff will be granted an opportunity to file an amended complaint.  A separate Order will follow.

```
                              _____/s/_____
                              DEBORAH K. CHASANOW
                              United States District Judge
```