```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
                                  :
MONICA CHO
                                  :
     v.                           :  Civil Action No. DKC 2005-2350
                                  :
MONTGOMERY COUNTY, MARYLAND
                                  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this discrimination case is the motion by Defendant Montgomery County, Maryland (the "County") to dismiss Plaintiff Monica Cho's second amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). (Paper 40). The issues have been fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the court will grant Defendant's motion to dismiss.

**I. Background**

Plaintiff, a resident of the County, is legally blind. In September 2003, Plaintiff asked the County to install a sidewalk on a six-block portion of Falls Chapel Way, a road adjacent to her home. As required by local law, a public hearing was held regarding the proposal. Following the hearing, the Public Hearing Officer ("PHO") submitted a report to the County Executive regarding the proposal. The PHO did not recommend the project's authorization, and the County Executive subsequently denied the proposal. On July 21, 2005, Plaintiff filed a complaint in the Circuit Court for Montgomery County, alleging that the County

discriminated against her on the basis of her disability and violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132, and the Rehabilitation Act of 1973 ("RHA"), 29 U.S.C. § 794(a).  On August 25, 2005, the County removed the case to this court pursuant to 28 U.S.C. § 1441 because it involved a federal question.

In the original complaint, filed on August 25, 2005, Plaintiff alleged that the County's failure to build the requested sidewalk deprived her of a safe travel route to the local public elementary school, voting facilities, and public transportation in violation of the ADA and the RHA.  (Paper 2, at 3).  On September 1, 2005, the County filed a motion to dismiss for failure to state a claim. (Paper 11).  On January 19, 2006, the court granted the County's motion.  (Paper 20).  The court dismissed Plaintiff's RHA claim with prejudice because Plaintiff failed to allege that the County received federal funding, as required by the statute.  (Paper 20, at 6-7).

With regard to Plaintiff's ADA claim, the court noted that Plaintiff's claims were not articulated clearly:

> Because Plaintiff has not precisely pled either the benefit from which she claims she was excluded, or how the absence of a sidewalk caused that exclusion, it is difficult to determine whether she has or can state a claim.  Plaintiff's complaint is clearly focused on the relief she seeks, *i.e.* a sidewalk, but [is] . . . confused as to the public facility she claims she is denied access to by the absence of the sidewalk.  The

2

>       court will attempt to analyze the complaint as
>       if it asserts three different types of
>       violations: the absence of a sidewalk by
>       itself; the absence of a sidewalk to connect
>       two existing sidewalks; and the absence of a
>       sidewalk as it might deny her access to a
>       public school, a voting facility, or to
>       transportation.

(Paper 20, at 8-9).

First, the court dismissed Plaintiff's claim that the County violated the ADA merely by refusing her sidewalk request: "No authorities hold that a government must construct a sidewalk simply to comply with the ADA." (Paper 20, at 9). The court also held that the County did not violate the ADA in allegedly failing to consider her disability in its decision-making process because no ADA provision renders this action alone to be a violation of the statute. (Paper 20, at 10).

Second, the court dismissed Plaintiff's claim that the ADA required the County to build a sidewalk to connect two existing tracts of sidewalk in order to allow Plaintiff access to the two existing sidewalks as "public programs." The court held that this claim relied on an overbroad interpretation of the ADA. The court stated: "Plaintiff's argument, taken to its extreme, would mean that every local government was required to connect every one of its sidewalks or else they would all be deemed 'inaccessible.'" (Paper 20, at 10-11).

Finally, the court dismissed Plaintiff's claim that the lack of a sidewalk denied her access to other public programs (*i.e.*, a

public school, voting facilities, and public transportation) because Plaintiff failed to allege facts sufficient to support her conclusory allegations. The court dismissed this final claim without prejudice because it appeared that Plaintiff might be able to amend to plead specific facts on which she based the claim. In its Opinion, the court instructed Plaintiff to amend her ADA claim so as to include "allegation[s] of fact as to when and how she was excluded from or denied access to these public benefits." (Paper 20, at 11). The court also directed Plaintiff to "articulate her claims separately by reference to each public facility from which she [was] excluded." (Paper 20, at 13).

Plaintiff filed an amended complaint on February 3, 2006. (Paper 22). In her amended complaint, Plaintiff asserted that the County violated the ADA by refusing to construct the requested sidewalk, thereby denying her access to Cold Spring Elementary School ("the school"), publicly owned Hadley's Park, and public transportation. Plaintiff asserted two additional claims: (1) the County violated the Montgomery County "Sidewalk Program" guidelines, which require that the County "maintain and construct appropriate sidewalks that are accessible to individuals with disabilities and do not exclude or deny their access to public benefits;" and (2) the County "discriminated against [Plaintiff] based on her disability by acting arbitrarily and capriciously in

4

denying her request for the [sidewalk construction]." (Paper 22, at 10-11).

The court dismissed with prejudice Plaintiff's two new claims, that the County violated the Sidewalk Program guidelines and that it acted arbitrarily and capriciously in denying her request. (Paper 34, at 10-11). The court dismissed without prejudice Plaintiff's claim that she had been denied access to the school. Plaintiff submitted a declaration with her opposition memorandum identifying specific instances when she was denied access to the school. Because the declaration was not attached to, nor referenced, in her complaint, the court could not consider it on the motion to dismiss. (Paper 34, at 7). The court advised Plaintiff that if she wished to amend the complaint again, she should provide specific factual support for her ADA claim.

Plaintiff filed this second amended complaint on June 29, 2006. (Paper 36). Plaintiff asserts that the County's failure to construct the requested sidewalk denies her reasonable access to the school. Along with her complaint she submitted an affidavit describing specific instances in which she was denied access:

> On December 15-17, 2003, snow on Falls Chapel Way made walking on the grass impossible and narrowed the available roadway such that walking to school was impossible, thereby denying me access. . . . On Friday, April 23, 2004, due to heavy rain, walking to school was physically impossible . . . denying me access to the school. . . . On September 7, 2005, the Cold Spring Elementary Back to School Night, held from 7:00 PM to 8:30 PM was inaccessible

5

> to me due to the danger of walking there and back at night. . . . The monthly Cub Scout meetings held at Cold Spring Elementary School, like the one on 26 September 2005 from 7:00 PM – 8:30 PM are again inaccessible to me due to the danger of walking at night.

(Paper 37, at ¶¶ 4-8).

Plaintiff seeks "construction of a four foot wide concrete sidewalk within the public right-of-way on the north-west side of Falls Chapel Way from Cold Spring Road to Orchard Brook Drive," and other equitable relief the court deems appropriate.

**II. Standard of Review**

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Accordingly, a 12(b)(6) motion ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in

the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  The court must disregard the contrary allegations of the opposing party.  *See A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).  The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

"In deciding a Rule 12(b)(6) motion, the court will consider the facts stated in the complaint and the documents attached to the complaint.  The court may also consider documents referred to in the complaint and relied upon by plaintiff in bringing the action." *Abadian v. Lee,* 117 F.Supp.2d 481, 485 (D.Md. 2000) (citing *Biospherics, Inc., v. Forbes, Inc.,* 989 F.Supp. 748, 749 (D.Md. 1997), *aff'd,* 151 F.3d 180 (4th Cir. 1998)).  When doing so, the court need not convert a Rule 12(b)(6) motion to dismiss to one for summary judgment so long as it does not consider matters "outside the pleading."  *See* Fed.R.Civ.P. 12(b) ("If [on a 12(b)(6) motion to dismiss,] matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .");

*Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 260-61 (4th Cir. 1998). Typically, the only information necessary for a decision on the motion is to be found in the pleading itself or in exhibits accompanying the pleading or items incorporated by reference in the pleading. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1371 (3d ed. 2006).

### III. Analysis

The County moves for dismissal on the grounds that it neither owns nor operates the school, and therefore is not required by the ADA to provide access to that facility (paper 40, at 2), and because Plaintiff has failed to demonstrate a causal connection between Defendant's conduct and her alleged injury (*id*., at 16).

The County correctly asserts that it is not the proper party to this suit. Plaintiff alleges that Cold Spring Elementary School is operated by the Montgomery County Public Schools, which does not provide transportation. The County cites extensively to the Maryland Code to support its contention that the Montgomery County Board of Education ("the Board") is the public entity that owns and operates the school, and is therefore responsible for ensuring its compliance with the ADA. Plaintiff conclusorily responds that this argument is a "denial of factual allegations" that "will surely be disputed in this case." (Paper 46, at 7-8). For reasons that are unclear to the court, Plaintiff also cites to a section of the Maryland Code providing that Board members may be reimbursed for

travel expenses by the Montgomery County Council. *Id.* (citing MD. CODE ANN., EDUC. § 3-902 (2006)).

Plaintiff's response is misguided; whether the County is a political body distinct from the Board is a question of law, not of fact. Montgomery County is a charter county created pursuant to Article 25A, section one, of the Annotated Code of Maryland. The Board was created pursuant to section 4-101 of the Code's Education Article, and is answerable to the state, not the County, "Each county board shall: (1) To the best of its ability carry out the applicable provisions of this article and the bylaws, rules, regulations, and policies of the State Board. . . ." MD. CODE ANN., EDUC. § 4-108 (2006). The Board is a body politic that may sue and be sued. *Id.* at § 3-104.

Cold Spring Elementary School, as a public school in Montgomery County, is owned and operated by the Board, not the County. *Id.* at § 4-108 ("Each county board shall: . . . [a]dopt, codify, and make available to the public bylaws, rules, and regulations . . . for the conduct and management of the county public schools.").

The ADA states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any *such entity*." 42 U.S.C. § 12132 (emphasis added). The use of

the phrase "such entity" means that each public entity is singularly responsible for ensuring its own compliance with the ADA. *See, e.g., Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 489 (4th Cir. 2005) (holding that state colleges and universities are the entities responsible for making reasonable accommodations for disabled students).  In light of the clear authority given to the Board for the management of Montgomery County public schools, the County is not the proper defendant in this ADA claim alleging denial of access to the school on the basis of Plaintiff's disability.  Moreover, Plaintiff cannot use the actions of one public entity, *i.e.*, the County, to assert her rights under the ADA with respect to another public entity, *i.e.*, the Board.  It goes without saying that one party cannot be sued for the infractions, alleged or real, of another party.  Thus, the complaint is again subject to dismissal because the County is not the proper Defendant.

In her three attempts to assert a claim, Plaintiff has been largely focused on her requested relief, the construction of a sidewalk along Falls Chapel Way.  Even if Plaintiff were to sue the proper defendant and ultimately prove that her rights under the ADA have been violated, construction of the sidewalk may not be the definite, nor even the most probable, outcome of a favorable decision.  When fashioning an equitable remedy for civil rights violations, courts are guided by general principles of equity,

where "[t]he principal limitation . . . [is] that the relief should be no broader and no more burdensome than necessary to provide complete relief to the plaintiff." *Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F.Supp.2d, 456, 468 (D.Md. 2000) (citing *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 766 (4th Cir. 1998), *vacated on other grounds*, 527 U.S. 1031 (1999)). It is likely that a less burdensome solution than construction of a sidewalk, which involves a taking of personal property, could facilitate Plaintiff's access to the school. "Numerous alternatives are available for the States to consider in determining how to modify existing facilities to accommodate their disabled citizens. Importantly, a State need not undertake what is probably the most expensive enterprise . . . if other methods effectively make the program or service accessible." *Constantine*, 411 F.3d at 489 (internal quotations omitted).

**IV. Conclusion**

For the reasons stated above, Defendant's motion to dismiss Plaintiff's second amended complaint will be granted. A separate Order will follow.

            /s/
    DEBORAH K. CHASANOW
    United States District Judge